Pooja Rajaram (CASB #241777)
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA 90025
Tele: 310-392-5455
Fax: 310-306-8491
prajaram@quitam.org

Attorneys for *Qui Tam* Plaintiff-Relator

FILED

Sep 28 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ gloriav        DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| [UNDER SEAL],<br><br>            Plaintiffs,<br><br>v.<br><br>[UNDER SEAL],<br><br>            Defendants. | Case No.: **'22CV1458 GPC MDD**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. § 3729, et seq.] AND DEMAND FOR JURY TRIAL**<br><br>**FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

**DOCUMENT TO BE KEPT UNDER SEAL**

Pooja Rajaram (CASB #241777)
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA  90025
Tele: 310-392-5455
Fax:  310-306-8491
prajaram@quitam.org

Attorneys for *Qui Tam* Plaintiff-Relator

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MICHAEL FITZGERALD MOORE, <br><br> Plaintiffs, <br><br> v. <br><br> DURAID A. ZAIA; RAMONA EGG RANCH, INC.; and DOES 1-10, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT [31 U.S.C. § 3729, et seq.]** <br><br> **FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

2

## QUI TAM COMPLAINT

The Relator, Michael Fitzgerald Moore, files this qui tam action in the name of the United States against Duraid A. Zaia, a sole proprietorship, and Ramona Egg Ranch Inc. ("Defendants"), pursuant to 31 U.S.C. § 3730, and states as follows:

## INTRODUCTION

1.      On March 11, 2020, the World Health Organization declared the novel coronavirus (COVID-19) a global pandemic. On March 27, 2020, the President signed into law the Coronavirus Aid, Relief and Economic Security Act, which created the Paycheck Protection Program ("PPP").

2.      The PPP provides forgivable, emergency loans to small businesses that certify, under penalty of fine or imprisonment, that they will use the funds only to pay for payroll expenses, rent, mortgage interest, or utilities during a covered period.

3.      Duraid Zaia ("Zaia"), an individual who operates a sole proprietorship bearing his name states that the sole proprietorship is in the petroleum and petroleum products, merchant wholesalers industry.  On April 29, 2021, the sole proprietorship received a PPP loan in the amount of $2,371,480.  Despite the clear requirements, as stated on the application form, that loan funds obtained through the program must be used only to used only to pay a business's payroll, rent, mortgage interest, or utilities expenses, Duraid Zaia  knowingly obtained these funds despite the fact that he did not have even a fraction of the number of employees claimed, thereby grossly inflating the amount of PPP funds he was eligible for.

4.      On March 27, 2021, Ramona Egg Ranch Inc., a California corporation that purports to be in the Chicken Egg production industry, received a PPP loan in the amount of $1,979,302.  Duraid Zaia is the registered agent for, and upon information and belief, owner of Ramona Egg Ranch. Despite the clear requirements, as stated on the application form, that loan funds obtained through the program must be used only to pay a business's payroll, rent, mortgage interest, or utilities expenses, Ramona Egg Ranch Inc., knowingly obtained these funds despite the fact that no working chicken ranch was in operation at

the time of the loan application, thereby falsely obtaining PPP funds for a nonexistent business.

5.     This knowing misappropriation of federal funds violates the False Claims Act because the Government would not have funded the loan if it knew that Defendants had falsely certified its eligibility for the funds. Accordingly, Duraid Zaia submitted and caused both the sole proprietorship petroleum company and the Ramona Egg Ranch to submit false claims to the Government for which they should be held liable, jointly and severally, for actual damages, treble damages, fines, and attorney's fees.

### Parties, Jurisdiction, and Venue

6.     Relator Michael Fitzgerald Moore resides in Ramona, California. From 2017 through the present, he has lived on a parcel of land off of East Old Julian Highway, within the confines of Ramona Egg Ranch.

7.     Defendant Duraid Zaia, is the owner and operator of a the Duraid Zaia sole proprietorship. This business is ostensibly a petroleum company located at 10585 Tierra Santa Boulevard, in San Diego, CA. This "petroleum company" purports to employ 137 employees, at an average yearly compensation of $83,088 per employee. However, there is only a four-island gas station with mini mart and auto repair shop (Tierra Santa Town Center Gasoline) located at 10585 Tierra Santa Boulevard. No other structures or facilities exist to support the number of employees claimed.

8.     Defendant Ramona Egg Ranch Inc., is a California corporation, also listed as being located at 10585 Tierra Santa Boulevard, in San Diego, CA, although its physical address is 30150 Briggs Road, Menifee, CA, 92584. Although Ramona Egg Ranch Inc, had once been a working egg ranch it has been non-operational since at least 2017. No chickens are present on the land, and there is only one part-time employee who oversees the property.

9.     This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and 31 U.S.C. § 3732(a).

### GENERAL ALLEGATIONS

### The Paycheck Protection Program

11. On March 27, 2020, sections 1102 and 1106 were added to the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, 134 Stat. 281, , 15 U.S.C. §636 et. seq.. These sections created the PPP, which initially made $349 billion in forgivable loans available to small businesses impacted by the COVID-19 pandemic.

12. The PPP is a part of the U.S. Small Business Administration ("SBA") 7(a) loan program, 13 CFR 120.2 (a). The SBA administers the PPP, promulgates the rules and regulations governing the PPP, and guarantees all PPP loans made by lenders.

13. Section 1102 of the Act temporarily permits SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

14. The PPP allows small businesses (less than 500 employees) to obtain forgivable loans of up to $10 million, at 1% interest, to cover payroll costs, rent, mortgage interest, utilities and other overhead expenses for a "covered period." PPP loans are processed and approved by qualified lenders that the SBA approves. Lenders may issue PPP loans without the SBA's prior review or approval, but lenders must agree to be responsible for determining borrower eligibility under the SBA's criteria. To that end, the SBA issued interim final rules governing PPP eligibility on April 2, April 3, April 14, and April 24, 2020.

15. Because the initial $349 billion originally allocated for the PPP was quickly exhausted, Congress proposed a bill authorizing a second tranche of emergency funding. Accordingly, on April 24, 2020, the President signed into law the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620,

whereby Congress allocated another $310 billion for PPP loans to small businesses. The SBA continued to adopt interim rules governing eligibility through June 24, 2020.

16. On June 5, 2020, the PPP was further modified when the President signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641.. The Flexibility Act modifies the original PPP loan criteria that was set forth in the CARES Act. Some of the major modifications set forth in the Flexibility Act are:

- Congress changed the loan repayment period from 2 years to 5 years with the interest rate remaining at 1%.

- Congress expanded the original 8-week "covered period" for a business to exhaust its loan proceeds on payroll, rent, mortgage interest, or utilities, before the borrower may qualify for loan forgiveness. The new covered period is the earlier of a 24-week period or December 31, 2020, for any new borrower after June 5, 2020, to spend the loan funds on approved expenses. Borrowers who borrowed before June 5, 2020, may choose between the 8-week covered period or the extended period.

- Congress relaxed the requirement that 75% of the borrower's loan funds be spent on payroll expenses and reduced the requirement to 60%. The remaining 40% of the funds may be used for rent, mortgage payments, or utilities.

- Congress extended the deferral period for loan repayments to begin for any unforgiven loan amount from 6 months to the date on which the borrower's forgiveness amount is remitted to the lender.

- Congress extended the safe harbor date from June 30, 2020, to December 31, 2020, for a borrower to rehire laid off full-time equivalent ("FTE") employees, so as not to have the borrower's loan forgiveness amount reduced.

- Between February 15 and December 31, 2020, loan forgiveness was determined without regard to the reduction of FTE employees, if the borrower in good faith can prove either: (a) an inability to rehire individuals who were employees on February 15, 2020, and an inability to hire similar qualified employees by December 31, 2020; or (b) the business has been unable to return to the same level of business activity it was at before February 1, 2020, due to COVID-19 health compliance requirements.

17. On December 27, 2020, The Economic Aid to Hard Hit Small Businesses, Nonprofits and Venues Act (Economic Aid Act) Pub. L. 116-260, 134 Stat. 1182, was enacted. This Act reopened and expanded lending under the PPP. New borrowers were therefore able to apply for PPP loans if they met the eligibility requirements established by the original PPP program. In addition, previous borrowers under the PPP program were able to apply for an additional loan. The deadline for loan applications was March 31, 2021.

18. On March 30, 2021, the PPP Extension Act of 2021, Pub. L. 117-6, 135 Stat. 250, extended the application deadline for PPP loans to May 31, 2021. It also extended the PPP program authorization through June 30 2021, to allow the SBA enough time to process the loans that were received by May 31.

19. Through May 31, 2021, 5,467 lenders participated in the PPP, issuing 11,823,594 loans totaling nearly $800 billion. Notably, PPP loans between $1 million and $2 million comprise only .4% of the total number of loans funded across the country;

there were only 422 loans between $2 million and $5 million, which means that only .0036% of total loans were in this range.   The average loan amount is $42,000.

### The PPP Borrower Application Form

20.    The PPP has a uniform Borrower Application Form ("BAF") that lenders must use or incorporate into their loan applications. A copy of the BAF (revised March 18, 2021) is attached as Exhibit 1. In addition to requiring a report of the business's average monthly payroll expense, number of employees, and the names of all owners with a 20% or more equity in the business, the BAF requires the borrower to represent the "purpose of the loan" by checking boxes for more than one of the following categories: payroll, lease/mortgage interest, utilities, or other (with room to explain other).

21.    In addition to identifying the purpose of the loan, the BAF requires the following certifications:

- "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of Treasury (Treasury) implementing the Paycheck Protection Program under [the CARES Act, the Economic Aid Act] …(the Paycheck Protection Program Rule)."

- "All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules…."

See Exhibit 1 (emphasis added).

22.    The BAF further requires, in relevant part, that an authorized representative of the applicant "certify in good faith" each of the following by initialing next to each item:

8

- "The Applicant was in operation on February 15, 2020, has not permanently closed, and…had employees for whom it paid salaries and payroll taxes, or paid independent contractors…"

- "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

- "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

- "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C.1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine or not more than $5,000; and, if submitted to a federal insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine or not more than $1,000,000."

See Exhibit 1 (emphasis added).

23. Both Duraid Zaia and Ramona Egg Ranch submitted their completed BAFs to Capital Plus Financial, a lender located in Bedford, Texas.

24. Although Moore does not possess a copy of either Duraid Zaia's or Ramona Egg Ranch's final BAF, each Defendant was required to certify to the truth and accuracy of the above representations in the BAF, the falsity of which is punishable by significant liability, fines and imprisonment. Each certification was material to the Small Business Administration's decision to proceed with a loan.

**Duraid Zaia's Sole Proprietorship  Fraudulently Represented on its PPP Loan Application that it Will Use the Loan Funds Only for Authorized Purposes**

25. On April 29, 2021, Duraid Zaia was approved for a $2.37 million dollar PPP loan to his sole proprietorship petroleum company, located at 10585 Tierrasanta Blvd, in San Diego, CA. The loan was approved and disbursed in reliance upon Zaia's assertion that his sole proprietorship petroleum company had 137 employees, each with an average salary of $83,088 per employee.  Zaia reported that the purpose of the loan was to cover payroll expenses.

26. However, the only business located at 10585 Tierrasanta Blvd is a 4-island gas station with associated mini-mart and auto repair shop. No other structures or facilities necessary to support a large business with 137 employees exist at this address. There is also no record of the sole proprietorship existing at any other address.

27. Relator knows this because he lives in nearby and has been to the gas station at this address. He has personally observed that no other structures of facilities exist at this location sufficient to house and support 137 employees.

**Ramona Egg Ranch Fraudulently Represented on its PPP Loan Application That it Will Use the Loan Funds Only for Authorized Purposes**

28. On March 27, 2021, Ramona Egg Ranch, with a business address of 10585 Tierrasanta Blvd, San Diego CA, and a physical address of 30150 Briggs Road, Menifee, CA, was approved for a $1.98 million dollar PPP loan. The loan was approved and disbursed based on the assertion that Ramona Egg Ranch had 75 employees. Ramona Egg Ranch Inc. reported that the purpose of the loan is to cover payroll expenses. Per the

SBA's eligibility requirements, Ramona Egg Ranch had to have had an estimated $9.5 million in payroll expenses in 2019, to qualify for the PPP loan in the amount approved.

29.    Since at least 2017, there has been no working egg ranch at the property. Relator has dwelt on the land directly adjacent to the Ramona Egg Ranch fence line off of East Old Julian Highway in Ramona, CA, since April 1, 2017. From his residence, he can see the abandoned chicken coops, as well as the comings and goings on the ranch land. From 2017 to the present, there have been no chickens on the ranch. The large structures that comprise the chicken coops are out of use and in disrepair. The buildings formerly used as large chicken coops are clearly visible from his residence, and he has not seen or heard any evidence of an active chicken ranch, nor has he seen or heard any chickens at all on the property since April 1, 2017, the date he moved onto the property. Although there are additional, newer chicken coops at the Briggs Road entrance to the Ramona Egg Ranch; there has not been any egg production since 2017 there either. Relator knows this as he has been to that side of the Ranch on multiple occasions in 2021 and has seen firsthand that there are no hens and no egg production. In addition, the land and facilities at 31510 Briggs Road have been advertised for lease for industrial purposes and storage since January 2021. Portions of the ranch land has been leased for cattle grazing, and Relator has seen cows on the land, but no chickens. Relator has only seen one part time employee on the premises, who was there to conduct general land maintenance and upkeep, and to collect rents from the 10-11 other tenants who also have mobile homes on the Ranch land. This employee confirmed to relator that he was the only person working on the Ranch, both in 2019 and in 2021.

## Attorney's Fees and Conditions Precedent

30.    All conditions precedent to filing suit have been performed.

31.    The specific facts and circumstances alleged in this Complaint have not been publicly disclosed: (a) in a federal criminal, civil, or administrative hearing in which the U.S. Government or its agent is a party; (b) in a Congressional, Government

Accountability Office, or other U.S. Government report, hearing, audit, investigation; or (c) to the news media.

32.  To the extent any Court determines that a public disclosure has taken place, Moore is an original source of the information upon which this Complaint is based, as that term is defined in 31 U.S.C. § 3730(e)(4)(B). Specifically, Moore has knowledge that is independent and materially adds to the publicly disclosed allegations or transactions, and on August 29, 2022, Moore, through his counsel, voluntarily disclosed to the government the information on which the allegations in this Complaint are based.

## Count I

## 31 U.S.C. § 3729(a)(1)(A)

33.  The Relator realleges the allegations made in Paragraphs 1 through 32.

34.  This a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

35.  Through the acts described above, Defendants and their agents and employees knowingly presented and caused to be presented to the Government materially false or fraudulent claims for a PPP loan.

36.  The Government, unaware of the material falsity of the claims made or caused to be made by the Defendants, approved, paid, and participated in payments made by the Government's fiscal intermediaries for a loan that otherwise would not have been allowed.

37.  By reason of these payments and approvals, the Government has been damaged and continues to be damaged, in an amount yet to be determined. WHEREFORE, the Relator requests that judgment be entered against Defendants, ordering that:

a.  Defendants cease and desist from violating the False Claims Act, 31 U.S.C. §3729 et seq.;

b.    Defendants pay an amount equal to three times the amount of damages the Government has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $12,537.00 for each violation of 31 U.S.C. § 3729;

c.    The Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d.    The Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); and

e.    The Government and the Relator be granted all such other relief as the Court deems just and proper.

## Count II

### 31 U.S.C. § 3729(a)(1)(B)

38.    The Relator realleges the allegations made in Paragraphs 1 through 32.

39.    This a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

40.    Through the acts described above, Defendants knowingly used or caused to be used a materially false record or statements to get a PPP loan paid using U.S. Government funds.

41.    The Government was unaware of the material falsity of the records, statements, and claims Defendants submitted as part of the JetReady BAF.

42.    But for Defendants' use of the materially false record or statement, the PPP loan would not have been paid.

43.    By reason of Defendants' use of these materially false records and statements, the Government has been damaged.

WHEREFORE, the Relator requests that judgment be entered against Defendants, ordering that:

a.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. §3729 et seq.;

b.      Defendants pay an amount equal to three times the amount of damages the Government has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $12,537.00 for each violation of 31 U.S.C. § 3729;

c.      The Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

d.      The Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); and

e.      The Government and the Relator be granted all such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, the Relator hereby demands a trial by jury.

Dated:  September 27, 2022

Respectfully submitted,

KLEIMAN / RAJARAM

By: _____

Pooja Rajaram (CASB #241777)
KLEIMAN / RAJARAM
12121 Wilshire Blvd., Ste. 810
Los Angeles, CA  90025
Tele: 310-392-5455
Fax:  310-306-8491
prajaram@quitam.org

Attorneys for Qui-Tam Plaintiff-Relator
MICHAEL FITZGERALD MOORE

14

# EXHIBIT 1



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐LLC<br>☐ Independent contractor ☐ Self-employed individual<br>☐ 501(c)(3) nonprofit ☐501(c)(6) organization<br>☐ 501(c)(19) veterans organization<br>☐ Other 501(c) organization ☐ Housing cooperative<br>☐Tribal business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|
| **Business Legal Name** | **NAICS Code** | **Applicant (including affiliates, if applicable) Meets Size Standard** (check one): |
| | | ☐No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies<br>☐SBA industry size standards<br>☐SBA alternative size standard |
| **Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed)** | **Business TIN (EIN, SSN, ITIN)** | **Business Phone** |
| | | |
| | **Primary Contact** | **Email Address** |
| | | |

| Average Monthly Payroll: | $ | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ | Number of Employees: | |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☐ Payroll Costs | ☐ Rent / Mortgage Interest | ☐ Utilities | ☐ Covered Operations Expenditures | |
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | ☐ Other (explain): _____ | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| | | | | |
| | | | | |

**PPP Applicant Demographic Information (Optional)**

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| | |

| | Select Response Below: |
|---|---|
| Veteran | ☐ Non-Veteran; ☐ Veteran; ☐ Service-Disabled Veteran; ☐ Spouse of Veteran; ☐ Not Disclosed |
| Gender | ☐ Male; ☐ Female; ☐ Not Disclosed |
| Race (more than 1 may be selected) | ☐ American Indian or Alaska Native; ☐ Asian; ☐ Black or African-American; ☐ Native Hawaiian or Pacific Islander; ☐ White; ☐ Not Disclosed |
| Ethnicity | ☐ Hispanic or Latino; ☐ Not Hispanic or Latino; ☐ Not Disclosed |



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☐ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☐ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☐ |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☐ |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? <br> Initial here to confirm your response to question 5 → _____ | ☐ | ☐ |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? <br> Initial here to confirm your response to question 6 → _____ | ☐ | ☐ |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | ☐ | ☐ |
| 8. Is the Applicant a franchise? | ☐ | ☐ |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | ☐ | ☐ |

SBA Form 2483 (3/21)                                                                 2



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

### By Signing Below, You Make the Following Representations, Authorizations, and Certifications

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____ The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____ Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____ The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____ I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

_____ The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

_____ The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

_____ The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

_____ The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

_____ I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_____ I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.


_____          _____
Signature of Authorized Representative of Applicant          Date


_____          _____
Print Name          Title


SBA Form 2483 (3/21)          4



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

## Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and ***submitted to your SBA Participating Lender***. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

## Instructions for completing this form:

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**



For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

SBA Form 2483 (3/21)                                        6



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.